**EXHIBIT A**

## 2005 Hudson Valley Contractors Agreement

This Agreement is made between Service Employees International Union, Local 32BJ, AFL-CIO, CLC (hereinafter "the Union") and the undersigned cleaning contractor (hereinafter "the Employer").

### Article 1. Recognition

1.1.    This Agreement shall apply to all service employees employed in any facility, excluding commercial office buildings under 100,000 square feet, in Westchester, Putnam, Dutchess, Rockland, Orange and Sullivan Counties in the State of New York. Economic terms and conditions for residential buildings, hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses, bowling alleys and industrial facilities, route work, bank branches and for all other facilities in counties other than Westchester and Rockland Counties, shall be set forth in riders negotiated for each location covered by this Agreement.

1.2.    The Union is recognized as the exclusive collective bargaining representative for all classifications of service employees within the bargaining unit defined above.

1.3.    The Employer shall be bound by and subject to the 2005 Independent Contractors Agreement (or the 2005 RAB Contractors Agreement), the 2005 Long Island Contractors Agreement, the 2005 New Jersey Contractors Agreement, the 2005 Fairfield County Agreement, and the 2005 Hartford County Agreement (or their RAB counterparts) in the event the Employer performs work covered by those agreements.

1.4.    Route work is all work performed by the Employer other than in facilities where the Employer contracts directly with the owner and/or agent. Transit terminals, and complexes of contiguous commonly owned commercial buildings of 100,000 square feet or more, shall be subject to the terms of this Agreement.

1.5.    If the Employer takes over jobs subject to rider agreements, it

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

1

shall assume and be bound by the remaining terms of any such rider agreements between the Union and the predecessor Employer. Within five (5) business days of the Employer's written request to the Union and documentation that the Employer has been invited to bid on the account, the Union will provide the Employer with a copy of the applicable rider agreement.

1.6.    Upon the execution of this Agreement, the Employer will provide the Union with a list of all its locations subject to the Agreement where it provides services. Upon the Union's written request, except to the extent prohibited by law, the Employer will provide the Union in writing for each account the name, Social Security number, home address, job classification, pay rate and shift of each employee assigned to each account. The Employer shall monthly notify the Union in writing of the name, Social Security number and home address, wage rate and job assignment and shift of each new employee engaged by the Employer. The Employer shall also monthly notify the Union in writing of all changes in employees' work status, including increases or decreases in working hours, changes in wage rates and or work locations and terminations or separations.

1.7.    Within five (5) business days after notification that the Employer has become a service provider at a new location subject to this Agreement, the Employer shall notify the Union in writing of the new location. The notice shall be sent by facsimile to the Union at 101 Avenue of the Americas, New York, New York.

1.8.    The Employer will not impede the Union's access to its employees at the work-site. The Union will not disrupt the employees work and shall provide reasonable notice. The Union and the Employer will develop procedures to provide for Union access appropriate for work sites with special security requirements.

1.9.    The Employer (and its agents) will not take any action or make any statements that state or imply opposition to the employees selecting the Union as their collective bargaining agent. Where required by law, and upon the Union's demonstration that a majority of employees at a location (or contiguous grouping of locations), or at any other appropriate grouping of

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

locations, at the Union's option, have designated the Union as their bargaining representative by signing authorization cards or petitions, the Employer shall recognize the Union for that location or locations.

1.10. "Service employees" as used in this agreement is intended to cover the classifications and employees covered under the Independent Contractors Agreement.

## Article 2.  Union Security and Check-off

2.1. It shall be a condition of employment that all employees covered by this Agreement shall become and remain members in the Union on the 31st day following the date this Article applies to their work-location or their employment, whichever is later.  The requirement of membership under this section is satisfied by the payment of the financial obligations of the Union's initiation fee and periodic dues uniformly imposed.

2.2. Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting an employee's discharge because he has not met the requirements of this Article, unless the Employer questions the propriety of doing so, he shall be discharged within 15 days of the letter if prior thereto he does not take proper steps to meet the requirements.  If the Employer questions the propriety of the discharge, the Employer shall immediately submit the matter to the Arbitrator.  If the Arbitrator determines that the employee has not complied with the requirements of this Article, the employee shall be discharged within 10 days after written notice of the determination has been given to the Employer.

2.3. The Employer shall be responsible for all revenue lost by the Union by reason of any failure to discharge an employee who is not a member of the Union, if the Union has so requested in writing.  In cases involving removal of employees for non-payment of the requirements of this Article, the Arbitrator shall have the authority to assess liquidated damages.

2.4. The Union shall have the right to inspect the Employer's payroll records to determine the employees of the Employer who are covered by this Agreement.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

3

2.5.    The Employer agrees to deduct monthly dues, initiation fees, COPE or American Dream Fund contributions, from the wages of an employee, when authorized by the employee in writing in accordance with applicable law. The Union will furnish to the Employer the necessary authorization forms.

2.6.    If the Employer fails to deduct or remit to the Union the dues or other monies in accordance with this section by the 20th day, the Employer shall pay interest on such dues at the rate of one percent per month beginning on the 21st day, unless the Employer can demonstrate the delay was for good cause due to circumstances beyond its control.

2.7.    If an employee does not revoke his dues check-off authorization at the end of the year following the date of authorization, or at the end of the current contract, whichever is earlier, the employee shall be deemed to have renewed his authorization for another year, or until the expiration of the next succeeding contract, whichever is earlier.

## Article 3.  Discharge/Discipline

3.1.    Employees shall not be discharged, suspended or otherwise disciplined by the Employer without just cause after a sixty (60) calendar day trial or probationary period.

3.2.    The Employer shall give any employee discharged or disciplined a written statement of the grounds for the discharge or discipline within a reasonable period of time not to exceed ten working days after the discharge or imposition of discipline.  A copy of the statement shall be sent to the Union at the same time.

## Article 4.  Grievance/Arbitration

4.1.    All disputes or differences involving the interpretation or application of this agreement that arise between the Employer and the Union shall be resolved as provided in this Article, except where otherwise provided in this Agreement.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

4

4.2.    All grievances, except a grievance involving basic wage violations including contributions to employee benefit funds, shall be brought within forty-five (45) calendar days after the Union or the Employer has knowledge or should have had knowledge of the dispute, unless the parties agree to an extension, or the Arbitrator finds one should be granted for good cause shown.

4.3.    Employer and Union representatives may hold a Step 2 meeting on unresolved grievances within thirty (30) calendar days of the grievance at either party's request, provided that such meeting shall not be cause to delay arbitration.

4.4.    All grievances not resolved through the grievance procedure shall be subject to arbitration before the Office of the Contract Arbitrator ("OCA") as provided for and under the terms of the 2005 Independent Contractors Agreement whose terms are incorporated herein.  All hearings shall be held at the location designated by OCA unless otherwise agreed to by the Employer and the Union.

## Article 5. Contractor Transition

5.1.    When taking over or acquiring an account/location covered by this Agreement, the Employer is required to retain the incumbent employees and to maintain the same number of employees (and their hours) as was employed at the account/location by the predecessor employer, provided that the staffing level does not exceed the level in effect 90 days prior to the takeover, except where there were increases in the staffing levels during that period resulting from customer requirements. Any employer who adds employees to any job in anticipation of being terminated from that job shall be required to place the added employees on its payroll permanently. These employees shall not replace any regular employees already on the payroll of that employer. The Employer may not reduce the staffing level on takeover of the account/location unless the Employer can demonstrate an appreciable decrease in the work to be done.

5.2.    Employees retained by the employer shall be given credit for length of service with the predecessor employer(s) for all purposes including but not

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

5

limited to seniority and vacation entitlement, and completion of the trial period. Employees retained on takeover shall not have their rates of pay, hours worked or other terms and conditions reduced.

5.3.    The Employer shall be required to notify in writing the Union within two (2) business days after the Employer receives written cancellation of an account/location. Within five (5) business days of such cancellation notice, the Employer shall provide to the Union a list of all employees at the account/location, their wage rates, the number of hours worked, the dates of hire, the number of sick days, the number of holidays, benefit contributions made for employees, and vacation benefits.

5.4.    Failure of the Employer to notify the Union as required in 5.3, coupled with the successor employer's failure to recognize the Union and to maintain the terms and conditions of this agreement, will require the Employer to pay liquidated damages to the affected employees equal to two months wages.

5.5.    When an Employer bids on work covered by this Agreement, the Union will provide to all invited bidders within five (5) business days after receipt of their written request, the information described in the 5.3 above. Inaccuracies in the information provided by the incumbent Employer shall not excuse any obligations under this agreement of the Employer acquiring the account/location.

5.6.    The Employer shall provide the Union within five (5) business days of taking over the account/location the names, rates of pay, hours and other benefits provided at the location.

5.7.    If the Employer loses the account/location all accrued vacation benefits shall be included in a separate check.  The successor Employer's obligation for benefits shall commence to accrue on the date that it takes over the account/location. The successor employer shall permit an employee, upon request, to take unpaid leave equal to the accrued vacation time which the predecessor employer paid to the employee, because of the turnover in the account.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

6

## Article 6.  Seniority and Bumping

6.1.    After completion of the probationary period, an employee shall attain seniority as of his date of employment.  Seniority of an employee shall be based upon total length of service with the Employer or in the location, whichever is greater.  Location shall be defined as the building or buildings located in the same complex covered by the same contract between the Employer and the managing agent or owner.

6.2.    In the event of a layoff due to a reduction in force, the inverse order of classification seniority, where applicable, shall be followed. Classifications shall not be based on the hours that employees work.  In the event of bumping, there shall be no more than one bump.  For layoffs within a building, seniority shall be based upon total length of service in the building.

6.3.    In the event of a layoff due to the loss of a building to a non-union employer, 90 days after the lay-off or reduction from the location (as defined in 6.1), employees with more than two years seniority may bump the least senior employee within their classification within the County within which they were employed.

6.4.    Seniority shall continue to accrue while an employee is on leave of absence for less than six months, or for up to one year for employees laid off or covered by a workers compensation claim.

6.5.    Seniority rights are lost if any employee quits, is discharged for cause, fails to report or communicate within 7 days after notice of recall or is otherwise terminated or laid-off  for more than one year.

6.6.    Seniority shall prevail for the assignment of vacation selections. Overtime shall be offered to all employees in rotation by seniority.  Nothing in this provision is intended to prevent the Employer from offering extra hours to part-time employees rather than to full time employees where the latter would receive overtime pay for those hours.

6.7.    There shall be no transfer of employees from one location to another without the Union's consent.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

7

6.8.   Employees laid off shall have recall rights for up to 6 months to open positions in locations within which they were employed when laid off.

## Article 7.  Workload/Reductions

7.1.   No employee shall be assigned an unreasonable workload.

7.2.   The Employer shall not reduce the workforce assigned to any location either through attrition or lay-off without bargaining with the Union first, such bargaining to take place on an expedited basis.

## Article 8.  Leaves of Absence

8.1.   Employees may request a 60 day Personal or Emergency Leave if they have been employed at least 12 months.  The employee must request Personal Leave in writing 30 days prior to the date of the requested leave.  The Employer shall not unreasonably withhold approval of such leave providing that the leave is compatible with the proper operation of the location. Emergency Leave may be requested on an emergency basis, provided that upon the employee's return to work the employer may request documentation of the emergency.  No employee shall be entitled to a personal leave of absence more than once in a 12 month period, unless otherwise required by law.

8.2.   Employers shall provide employees with leaves of absence for union related activities, where practicable, provided that such leave shall not be unreasonably denied.  The Union and the Employer shall discuss the number and duration of such leaves of absence in any period of time.

8.3.   The Employer will comply with the provisions of applicable state and federal Family Leave laws regardless of the number of employees employed at any location or by the Employer.

8.4.   An employee with two years or more seniority shall be entitled to a leave of absence for illness or injury not to exceed six months.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

8

## Article 9.  Bereavement Pay

9.1.   In the event of a death in the employee's immediate family (parent, spouse, child, brother or sister) the employee shall receive the next three succeeding days off from the date of death and shall be paid for any time lost from his regular schedule as a result of such absence.

9.2.   In the event of a death in the employees' spouse's family ( mother-in-law, father-in-law, sister-in-law, brother-in-law) the employee shall receive one day off for the purpose of attending the funeral and shall be paid lost time due to such absence.

9.3.   An employee may be required to submit proof of death and/or that the deceased was within the class of relatives specified and/or that the employee attended the funeral.

## Article 10.  Jury Duty

10.1.  An employee who has completed his probationary period and who is required to report to court to answer a jury summons or serve as a juror on days he is regularly scheduled to work will be reimbursed the difference between the amount he receives for jury service and his regular pay. Jury Duty pay shall be limited to two weeks in any year. No employee may be required to work on a day he has jury duty.

## Article 11. Sick Leave

11.1.  Beginning with an employee's seventh month of employment, all full-time employees shall be entitled to seven (7) sick days per calendar year, except in an employee's first year of employment when he shall be entitled to a pro rated number of sick days for the time between the first day of his seventh month of employment to the end of the calendar year.  Employees regularly scheduled 27 ½ hours a week are full-time.

11.2.  All part-time employees shall be entitled to five (5) sick days per calendar year as provided in Article 11.1.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

9

**11.3.**  If by December 1st a full-time employee has not exhausted his sick leave he shall receive pay in lieu of such sick leave at his regular rate. Unused sick leave shall be paid in the payroll closest to December 15th.

**11.4.**  In the event the Employer willfully fails to pay unused sick leave as required by 11.3 in a timely manner, and upon written notice from the union, the Employer agrees that he will pay the equivalent of one day's pay for each week after the date it received notice from the union until payment is made.

## Article 12.  Vacations

**12.1.**  All employees shall accrue vacation with pay in accordance with the following schedule:

| Months on Payroll | Vacation with Pay |
|---|---|
| 6 months | 3 days |
| 1 year | 1 week |
| 2 years | 2 weeks |
| 5 years | 3 weeks |
| 15 years | 4 weeks |
| 25 years | 5 weeks |

**12.2.**  An employee who leaves his job on his own accord or who is terminated shall be entitled to his accrued vacation pay and any other accrued benefits.

**12.3.**  The vacation period shall be between May 1st and September 15th. Employees who want to take their vacation outside the vacation period can do so on mutual agreement with the Employer, which shall not be unreasonably withheld.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

10

12.4.  Vacation pay shall be paid in advance of the vacation period and shall be based on the employee's regularly scheduled straight time hours in the 8 weeks immediately preceding the vacation period.

12.5.  If a holiday falls during a scheduled vacation the employee at his or her option shall receive either an extra day's pay or an extra vacation day off with pay.

12.6.  Time off for vacations shall be scheduled giving preference by seniority.  The number of employees who may take vacation at any given time shall be at the discretion of the employer.

### Article 13.  Holidays

13.1.  The following holidays are designated as paid holidays for post-probationary employees: New Years Day, Labor Day, Memorial Day, Thanksgiving Day, Christmas Day, Independence Day, President's Day or Martin Luther King's Day and two Floating Days.

13.2.  The Floating Days will be decided in accordance with the needs of the building. In the event the building holiday list does not specify the holidays listed in 13.1., the employees shall be given an additional Floating Day to substitute for the missing holiday.  Employees shall give the Employer two weeks' advance notice before taking a personal day.

13.3.  Whenever any of these stated holidays shall fall on a Saturday or Sunday, it shall be observed on the following Monday or the preceding Friday depending upon when the building is closed.

13.4.  Holiday pay shall be equal to an employee's regular straight time pay.  An employee required to work on a holiday shall receive his regular pay plus holiday pay.  In order to be eligible to receive holiday pay, an employee must have worked at least two days in the week prior to the holiday.

### Article 14. The Workweek

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

11

14.1.  The workweek for full time employees shall consist of five consecutive days.

14.2.  The work day for full time employees shall be eight hours with a one half hour unpaid lunch period as close to the middle of the shift as practical.

14.3.  Any work performed in excess of eight hours in one day or forty hours in a week shall be paid at time and one half the employee's regular rate.

14.4.  All work performed on a sixth consecutive day in an employee's work week shall be paid for at time and one half the employee's regular rate.

14.5.  All work performed on a seventh consecutive day in an employee's work week shall be paid for at double the employee's regular rate.

14.6.  The minimum regular schedule for employees shall be 4 hours per night, except where riders currently provide otherwise.

14.7.  Employees who work at more than one location shall have their hours combined, as required by law, in determining their overtime pay.

14.8.  All wages, including overtime, shall be paid weekly in cash or check with an itemized statement of payroll deductions. If a regular pay day falls on a holiday, employees shall be paid on the preceding day.

## Article 15.  Work Assignment

15.1.  An employee assigned to a different job classification or transferred to a different job location which provides greater compensation shall be paid at either his regular rate of pay or the rate of pay in the new job classification or at the new location, whichever is higher.

15.2.  Employees who are required to use their own vehicles to travel job to job shall be compensated at the rate established by the Internal Revenue Service.

## Article 16.  Uniforms

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

12

**16.1.** The Employer shall continue the policy of providing uniforms where now in use. The uniforms shall be furnished without cost to the employees and the Employer will be required to provide for their maintenance.

## Article 17.  Severance Pay

**17.1.** One week severance pay shall be paid to all employees who have been in continuous employment for a period of one year and for each year of service thereafter not to exceed five years or five weeks pay who are laid off except when the employee is terminated for just cause or is terminated because the Employer is cancelled at a site.

## Article 18. Call in Pay

**18.1.** If an employee reports to work such employee shall receive the number of hours pay to which he would normally be entitled to that day unless work is unavailable because of an Act of God, such as fire, flood, blackout or meteorological event.

**18.2.** Employees shall be paid a minimum of four (4) hours pay when called in for work.

## Article 19.  Bulletin Boards

**19.1.** Where permission is granted by the building owner/manager, the Employer shall furnish a bulletin board at a conspicuous location in each of the Employer's locations and shall permit representatives of the Union, including stewards, to post notices pertaining to Union affairs on the bulletin board.

## Article 20.  Vacancies and Promotions

**20.1.** The Employer shall post all vacancies. Preference in filling vacancies shall be given to employees already employed in a building based on building seniority, but skill, ability and qualifications shall also be considered.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

13

Part-time employees shall be given preference by seniority in bidding for open full-time positions.

### Article 21.  Health Insurance

21.1.  The Employer shall contribute monthly the contributions set forth below to the Service Employees Local 32BJ North Health Fund:

| | |
|---|---|
| 21.1.1. | Effective January 1, 2005, for all full-time employees, $347.25 for each full-time employee. |
| 21.1.2. | Effective July 1, 2005, for all full-time employees, $435 for each full-time employee. |
| 21.1.3. | Effective January 1, 2006, for all full-time employees, $487 for each full time employee. |
| 21.1.4. | Effective January 1, 2007, for all full-time employees, $544 for each full time employee. |
| 21.1.5. | Effective January 1, 2005, the Employer shall continue making contributions on behalf of those part time employees for whom it is currently making contributions on December 31, 2004. The rate of such contributions shall be $165 per month, and shall increase as of July 1, 2005 to $200 per month, and shall remain at that rate through the duration of this Agreement. |
| 21.1.6. | Effective March 1, 2007, the Employer shall contribute $20 per month for each regular part-time employee to be used for a prescription drug card to be established by the Trustees. |
| 21.1.7. | Effective September 1, 2007, the Employer shall contribute $40 per month for each regular part-time employee to be used for a prescription drug card to be established by the Trustees. |
| 21.1.8. | Full-time employees shall be defined as those |

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

14

employees regularly employed 27 and one half or more hours per week.

21.2.  For employees who successfully complete their trial period contributions by the Employer shall commence on the month following the completion of the trial period and shall be made by the Health Fund under such rules, regulations and conditions as may be established by the Trustees of the Health Benefit Fund.  Employees hired on or after January 1, 2005, shall have a period of six months before becoming eligible to be participants in the Funds, and no contributions shall be made on behalf of the employees over the six month period.  The payments shall be made solely by the Employer without any contributions being required or deducted from the employees.  For the purpose ascertaining the payments to be made by the Employer to the Health Fund, earnings shall include wages paid in any week and during vacation periods.

21.3.  The Employer shall provide for each employee covered by the agreement statutory disability benefits as required by State law. The Employer shall pay the full cost of such benefits without any contributions or deductions by the employees.

## Article 22.  Pension Benefits

22.1.  The Employer shall continue making contributions to the Service Employees Local 32BJ North Pension Fund on behalf of the employees for whom it is currently making contributions as provided for under any rider or other agreements with the Union.  The contributions shall be made under and subject to such rules, regulations and conditions as maybe established by the trustees of the Pension Fund.

22.2.  Upon 60 calendar days written notice by the Union, in lieu of the contributions to the Building Service 32BJ North Pension Fund, the Employer shall make the contributions set forth in 22.1 to another Pension or Retirement Plan or Fund that the Union shall designate.

## Article 23.  Method of Payment

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

15

23.1.  Within fifteen calendar days of the first of the month following the month of service, the Employer shall submit a report and payment of the amount due to each Fund.

## Article 24.  Disputes Concerning Payment

24.1.  The Employer agrees that should there be any claim by the Union or any of the Trust Funds as to any discrepancies or disputes concerning the payment by the Employer to the respective Funds, that they or their representatives shall have the right on reasonable notice to examine the Employer's books at the Fund Office concerning such discrepancies or disputes, including payroll books, hours, work records, and other records pertaining to the number of employees and/or hours worked or paid. There shall be no cessation for any reason whatsoever (no lapse of time) of payments provided to be made to any or all of the Trust Funds mentioned in this Agreement.

24.2.  The provisions regarding payment shall not limit, restrict or prevent the Union and/or the Trustees from taking any other action or remedies or the Union from calling a work stoppage after an arbitrator's award.

24.3.  In the event the Employer fails to make timely payment of contributions due to any of the Funds and, if after written notice of non-payment from the Union or the Fund, a valid claim for benefits is asserted by one of its employees, the Employer shall be liable for the payment in full of such claim in addition to the contributions due to the Funds in question.

24.4.  In the event the Union or the Fund, because of a failure by an Employer to make the payment of contributions due to any of the Funds, institutes an arbitration proceeding, the arbitrator may include in his award a direction that the losing party shall pay to the other party the reasonable costs incurred for investigation, auditing, counsel fees and arbitration fees, in connection with the arbitration proceeding, together with interest all as set forth in the Multi-Employer Pension Plan Amendments Act of 1980.

24.5.  A default of any contributions due the Funds provided for in this

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

16

Agreement shall occur when said contributions are not received by the Fund Office within the first fifteen calendar days of the month for which said contributions were due the Funds. The Employer shall be given an additional ten calendar days from the date of receipt of written notice to remit the Fund contributions due. If said contributions are not received by the Fund Office within the prescribed time, the Employer shall pay to the Funds to which there is a default an additional 20% of the amount due as liquidated damages for the additional bookkeeping or processing expense required by the Funds, together with damages as set forth in 29 U.S.C. Section 1132.

24.6.  If the Employer shall fail to pay the Insurance and/or Pension payments and/or forward checkoff deductions and and/or any other payments required to be made by the Employer as provided in this Agreement, the Union and/or the Fund shall have the right to take such action or commence such proceedings for collection as it deems advisable. In the event that the Union calls a work stoppage because of the Employer's failure to make the required contributions to the Funds, the Employer shall be liable for the wages of each of his employees affected thereby for each day of such work stoppage up to the time such breach or default is corrected in accordance with the provisions hereof. Such action shall not be taken until five (5) business days after an arbitrator's award has issued finding a breach or default, or 90 ninety days after the Union/Fund's notice to the Employer of the breach or default, whichever shall occur first.

## Article 25.  Administration of Service Employees Local 32BJ North Funds

25.1.  The Service Employees Local 32BJ North Health Fund and North Pension Fund are each now being administered by Trustees, an equal number of whom have been appointed by Employers, and equal number of whom have been appointed by the Union. The Employer hereby authorizes the persons (or their successors or others chosen to act in their place) presently designated and acting for the employers as chosen by employer associations, to act as Trustees of the Fund, to be the representatives of the Employer, with the same force and effect as if the Employer designated said persons individually and agrees further that any vacancy which occurs may be filled in like manner. Each of the groups having authority to appoint Trustees shall have the right at

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

17

any time, with or without cause, to remove and replace any Trustee(s) so designated by or for them respectively, and to fill any vacancy or vacancies caused by death, resignation, or other cause, of any Trustee(s) so designated by or for them respectively. The Trustees are authorized to adopt such rules and regulations for the management and administration of the Funds, eligibility for and benefits to be paid as they deem proper and designate as officers of the Funds one or more of the Trustees to act for and on behalf of all the Trustees in any and all matters concerning the Funds. The Employer adopts the Service Employees Local 32BJ North Pension Fund Trust and the Service Employees Local 32BJ North Health Fund Trust and agrees to be bound thereby including any amendments thereto.

25.2. The money, property or assets of the Funds, or any of them or any part thereof, shall at no time be considered as that of the Union or any International or any Employer(s), but shall at all times belong to the Fund and to be held and administered as provided by law and in the Agreements and Declarations of Trust.

25.3. The Trustees of the respective Funds are hereby authorized and empowered to provide benefits under the Health and/or Pension Funds mentioned in this Agreement and for the employees of the respective Funds, for the officers and/or employees of the Unions contributing to any or all of the Funds, and for any employees of this or other Employers who have agreements with the Union which provide for contributions to the Funds, or any of them, relating to such employees.

## Article 26. Legal Fund

26.1. Effective January 1, 2005, the Employer shall make contributions to the Local 32BJ Building Service Group Pre-Paid Legal Plan of $223.60 per year per employee under the terms of the Legal Fund.

## Article 27. Training Fund

27.1. Effective January 1, 2005, the Employer shall make contributions to the Training Fund of $145.60 per year per employee under the terms of Thomas Shortman Fund.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

18

## Article 28. Provisions Applicable to All Building Service
## Local 32BJ Funds

**28.1.  If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' Trust Agreements, and any and all expenses of collection, including but not limited to counsel fees, arbitration costs and fees, court costs, fees and interest.**

**Where a contributing Employer is regularly and consistently delinquent, the Trustees in their discretion may require such security as they deem necessary.**

**28.2.  The Trustees of the Funds shall make such amendments to the Trust Agreement, and shall adopt such regulations, as may be required to conform to applicable law, and which shall in any case provide that employees whose work comes within the jurisdiction of the Union (which shall not be considered to include anyone in an important managerial position) may only be covered for benefits if the building in which they are employed has a collective bargaining agreement with the Union.  Any dispute about the Union's jurisdiction shall be settled by the Arbitrator if the parties cannot agree.**

**28.3.  Employees hired on or after January 1, 1997, but before January 1, 2005, shall have a waiting period of three (3) months before becoming eligible to be participants in the Funds, and no contributions shall be made on behalf of the employees over the three-month period.**

**28.4.  Employees hired on or after January 1, 2005, shall have a period of six months before becoming eligible to be participants in the funds, and no contributions shall be made on behalf of the employees over the six month period.**

**28.5.  Upon 60 calendar days written notice by the Union, in lieu of**

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

19

contributions to the Service Employees Local 32BJ North Health Fund, the Employer agrees to make payments into the Building Service 32BJ Health Fund to cover employees covered by this Agreement and/or group life insurance coverage under such provisions, rules and regulations and for such benefits as may be determined by the Trustees of the Fund, as provided in the Agreement and Declaration of Trust, at the contribution rates provided for in Article 21 above.

28.6.   Employees who are on workers compensation or who are receiving disability benefits or disability pension shall be covered by the Service Employees Local 32BJ Health Fund until they may be covered by Medicare or thirty (30) months from the date of disability, whichever is earlier.

28.7.   If during the term of this agreement, the Trustees of the Building Service 32BJ Health Fund find the payment provided herein is insufficient to maintain benefits, and adequate reserves for such benefits, they shall require the parties to increase the amounts needed to maintain such benefits and reserves.  In the event the Trustees are unable to reach agreement on the amount required to maintain benefits and reserves, the matter shall be referred to arbitration.

## Article 29. Wages

29.1.   The minimum hourly wage rates for all employees shall be as follows:

29.1.1.        Effective January 1, 2005, $9.75;

29.1.2.        Effective January 1, 2006, $9.95;

29.1.3.        Effective July 1, 2006, $10.10;

29.1.4.        Effective January 1, 2007, $10.30;

29.1.5.        Effective July 1, 2007, $10.50.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

20

29.2.  All incumbent full-time employees (those employees regularly scheduled 27 and one half hours a week or more) as of January 1, 2005 shall receive the following minimum hourly rates:

> 29.2.1.    Effective January 1, 2005, $10.75;
>
> 29.2.2.    Effective January 1, 2006, $10.95;
>
> 29.2.3.    Effective July 1, 2006, $11.10;
>
> 29.2.4.    Effective January 1, 2007, $11.30;
>
> 29.2.5.    Effective July 1, 2007, $11.50.

29.3.  All employees, including "red-circled" employees, shall receive the minimum hourly wage rate provided above or the following annual increase, whichever results in a higher rate of pay:

> 29.3.1.    Effective January 1, 2006, $.20;
>
> 29.3.2.    Effective July 1, 2006, $.15;
>
> 29.3.3.    Effective January 1, 2007, $.20;
>
> 29.3.4.    Effective July 1, 2007, $.20;

29.4.  The minimum rate for leadpersons shall be $.50 cents an hour more than the minimum rates set forth in 29.1. and 29.2. above.

29.5.  The minimum rate for all cleaners shall be at all times at least fifty (50) cents above the statutory minimum wage for cleaners in that county or portion thereof.

29.6.  The minimum rate for window cleaners shall be as follows: effective January 1, 2005, $14.88 per hour; effective July 1, 2005, $15.08 per hour; effective January 1, 2006, $15.43 per hour; and effective January 1,

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

21

2007, $15.83 per hour.

## Article 30.  Successors, Assigns and Subcontracting

30.1.  The Employer shall not subcontract, transfer, lease or assign, in whole or in part, to any other person, firm, corporation, partnership, or non-unit workers, bargaining unit work presently performed or hereafter assigned to employees in the bargaining unit, except to the extent required by government regulations regarding minority or female owned enterprises, in which event the Employer shall ensure that such enterprises employ bargaining unit employees under the wages and benefits provided under this Agreement.

30.2.  In the event the Employer sells or transfers all or any part of its business or accounts which are subject to this Agreement, the Employer shall require the acquiring employer to assume this Agreement.

30.3.  To the extent permitted by law, this agreement shall be binding on any other entities that the Employer, or its principals establishes or operates which perform work subject to this Agreement.

## Article 31. Non-Discrimination

31.1.  There shall be no discrimination against any employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law.

## Article 32.  Most Favored Nations

32.1.  If the Union agrees to different economic terms and conditions more favorable to the Employer at any location, those terms and conditions shall apply to any other Employer who takes over that location for the duration of the Union's agreement with the prior Employer.

32.2.  In the event the Union enters into a contract on or after December 1, 2007 within the geographic scope of 1.1. above (except for buildings/facilities

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

22

for which 1.1. authorizes rider agreements), whose economic terms or conditions are more favorable to such Employer than the terms contained in this agreement with respect to that building, the Employer shall be entitled to and may have the full benefit of any and all such more favorable terms for any of its similar buildings within the area defined in 1.1. above upon notification to the Union. This clause shall not apply to contracts entered into before December 1, 2007 even if the terms of any such contracts extend beyond that date.

## Article 33.  Prior Better Terms and Conditions

33.1.  At any location where the Employer is currently maintaining terms and conditions that are more favorable to employees (or some of them) than those provided for in this Agreement for that location, those terms and conditions shall continue to apply to the affected employees unless the Union and the Employer otherwise provide

33.2.  All rider agreements currently in effect whose terms extend beyond December 31, 2004, shall remain in effect, except that fund contributions provided for in any such rider shall be made on the dates provided for in the Rider at the rates in effect on those dates as provided for in this Agreement.

## Article 34.  Picket Line/No Strike Clause

34.1.  No employee covered by this Agreement shall be required to pass lawful primary picket lines established in an authorized strike, including picket lines established by Local 32BJ pursuant to an authorized strike at another job location. The Employer may not permanently replace or discipline any employee who refuses to pass such a picket line.

34.2.  There shall be no lockouts, and no strikes except that the Union may call a strike or work stoppage (a) after forty-eight hours written notice where the Employer has violated Article 1 of this agreement, (b) where the Employer fails to comply with an Arbitrator's Award within three weeks after the Employer's receipt of the award, (c) after forty-eight hours written notice

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

23

where the Employer has failed provide the Union with information or notices required by Article 5 above.

34.3.  The Employer shall provide staffing information to the Union upon its request for any job which it currently services within five (5) business days of the request.  If such  information is not provided, the Union shall have the right to engage in a work stoppage until such information is supplied.  During the period of work stoppage the employees shall continue to receive their regular wages and benefits.

## Article 35. Work Authorization and Status Disputes

35.1.  Recognizing that questions involving an employee's immigration/work status or personal information may arise during the course of his/her employment, and that errors in an employee's documentation may be due to mistake or circumstances beyond an employee's control, the Employer agrees to the following: in the event an issue or inquiry arises involving the immigration status or employment eligibility of a non-probationary employee, the Employer shall promptly notify the employee in writing and forward a copy of the notification to the Union.  If permissible under applicable law and/or regulations, the affected bargaining unit member shall be afforded reasonable opportunity to remedy the identified problem or to secure acceptable documentation demonstrating that the identified problem is in the process of review or correction before adverse action is taken. Any lawful changes in the employee's documentation or lawful correction in his/her social security number shall not be considered new employment or a break in service. If the bargaining unit member does not remedy the issue within 4 months, the bargaining unit member may be discharged and the Employer shall have no further obligation to hold a bargaining unit member's position. If the bargaining unit member obtains the valid documentation referenced above, when necessary, he/she will, consistent with the operational needs of the Employer, be permitted reasonable unpaid time off to attend relevant proceedings or visit pertinent agencies, for the purposes of correcting the identified problem, provided the Employer is given adequate notice of planned absences and verification of appointments, hearings or other proceedings for which time off is requested. A "no-match" letter from the Social Security Administration shall not itself constitute a basis for taking adverse

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

24

employment action against an employee or for requiring an employee to verify work authorization, subject to applicable law and/or regulation.  Employees placed on administrative leave to address work authorization issues, shall not be required to be paid, but may use any accrued paid leave during that time.

## Article 36.  Complete Agreement

36.1.  This Agreement contains the entire agreement between the Union and the Employer and replaces any prior agreements between them, except that the economic terms of any rider or other agreements shall remain in effect for the duration of the rider or other agreement or until such agreement is re-negotiated.

## Article 37.  Management Rights

37.1.  The Union recognizes, subject to the provisions of this agreement, the right of management to manage the business and direct the working force including, but not limited to, the right to determine the following:

1.    Reasonable work rules
2.    Work load
3.    Standards of quality of performance
4.    Hiring Methods
5.    Assign and transfer employees
6.    To lay off employees because lack of work or other reasons
7.    To discipline or discharge employees for just cause
8.    The promotion of employees
9.    Staffing levels
10.   Job Assignments

37.2.  Subject to the provisions of this agreement, the Employer shall have the right to manage and direct its business, direct the working force, plan direct and control its operations, hire, promote, discipline, suspend or discharge for just cause.  It is agreed that these enumerations of management rights set forth in this Article shall not be deemed to exclude other rights not enumerated, provided nothing is done in violation of the terms of this agreement.

## Article 38. Duration

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

25

**38.1.  This agreement shall terminate on December 31, 2007.**

**38.2.  Upon the expiration date of this agreement as set forth above, this agreement shall thereafter continue in full force and effect for an extended period until a successor agreement shall have been executed.  During the extended period, all terms and conditions hereof shall be in effect subject to the provisions of this paragraph.  During the extended period, the Employer shall negotiate for a successor agreement retroactive to the expiration date, and all benefits and improvements in such successor agreement shall be retroactive, if such agreement shall so provide.  In the event the parties are unable to agree upon terms of a successor agreement, the Union upon three (3) days oral or written notice to the Employer, may engage in any stoppage, or strike without thereby terminating any other provision of this agreement, until the successor agreement is concluded.**

**Local 32BJ, SEIU**                          **Employer:** *Superior Maintenance*

**By:** _____                       **By:** _____

**Dated:** 12-16-05                            **Dated:** 12|9|05

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

26

## <u>SIDE LETTERS</u>

1.     The Union agrees that, notwithstanding Article 28.7., the Employer will not be required to increase its contribution rate pursuant to that section by more than 5% in 2006 and 5% in 2007.

2.     The Employer will not be required to make benefit fund contributions for employees who are on leaves of absence, except as required by the Family Medical Leave Act.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

27

## SIDE LETTER ON BRONX

Notwithstanding anything to the contrary in the 2005 HVCA, or the 2005 ICA, or RABCA, the Union and the Employer will negotiate rider agreements for all existing commercial office building accounts in the Bronx.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

28

## <u>SIDE LETTER ON ROUTE WORK</u>

Route work shall be governed by riders for hours, and economic terms and conditions.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

29

## SIDE LETTER ON CONNECTICUT

1. The Employer agrees that it will recognize the Union as the exclusive bargaining representative of its employees within classifications defined in the Hartford Contractors' Agreement, at its locations or facilities within the State of Connecticut (outside the scope of the Fairfield Contractor's Agreement and the Hartford Contractor's Agreement), upon the Union's demonstration through authorization cards or petitions that a majority of the Employer's employees at any location or grouping of locations, at the Union's option, have designated the Union as their exclusive collective bargaining representative. The Employer shall have no obligation to recognize the Union under this Memorandum of Understanding prior to July 1, 2006.

2. Upon the Union's request, the Employer will provide the Union with the names, addresses, telephone numbers and work locations of its employees, within the scope of this Memorandum of Understanding, and shall update that information at reasonable intervals upon the Union's request.

3. The Employer will provide the Union with access to its work locations, subject to the customer's rules and requirements, and upon prior notice, to meet with employees on non-work time and in non-work areas, provided there is no interference with the conduct of the customer's business or with the performance of work.

4. The Employer will not take any action or make any statement in opposition to the selection by its employees of a collective bargaining agent, nor shall it state any preference or opposition to the Union as a bargaining agent for its employees.

5. Any disputes regarding the implementation of this Memorandum of Understanding shall be resolved under the grievance/arbitration procedure set forth in the Hartford Contractors' Agreement.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

30

## <u>SIDE LETTER ON ARTICLE 2.6.</u>

The Union shall provide the Employer with 60 days notice if the Union intends to change its current method of implementing Article 2.6.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

31

## SIDE LETTER ON TRANSFERS

If a customer, in writing, bars an employee from a location, but the Employer lacks good cause to terminate the employee, the Union and the Employer shall meet to discuss an alternative assignment for the employee that protects the employee's hours, wages and benefits.  If no such assignment is available or can be agreed upon, then the dispute shall be resolved in accordance with the provisions of the collective bargaining agreement.

C:\Documents and Settings\DENISE A. FORTE\Local Settings\Temporary Internet Files\OLK10A\2005 Hudson Valley.final as of 3-11-05 revised11.doc

32